# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | | |
|---|---|---|
| **SDT INDUSTRIES, INC.** | * | **MISC. CASE NO.  10-0014** |
| **VERSUS** | * | |
| **PENNINGTON SEED, INC., ET AL.** | * | **MAG. JUDGE KAREN L. HAYES** |

## MEMORANDUM ORDER

Before the court is a motion to quash subpoena duces tecum [doc. # 1] filed by SDT

Industries, Inc.  The motion is opposed.  For reasons stated below, the motion to quash is

GRANTED IN PART and DENIED IN PART.

## Background

The instant proceeding is an evidentiary offshoot of a  trademark, trade dress

infringement, and dilution action brought by OMS Investments, Inc. and The Scotts Company

(collectively, "Scotts") against Pennington Seed, Inc., Pennington Seed of Nebraska, Inc., and

Central Garden and Pet Company, Inc. (collectively, "Pennington") in the United States District

Court for the Southern District of Ohio, *OMS Investments, Inc., et al. v. Pennington Seed, Inc., et

al.*, Civil Action Number 09-0470.  In that suit, Scotts contends that Pennington infringes several

marks owned by Scotts that incorporate the term "GRO" as an element, including the

MIRACLE-GRO trademark.  *See* M/Quash Exh. B, Complaint, at ¶¶ 17-18, 45-53.  Pennington

counterclaimed against Scotts to obtain a declaratory judgment that the term and mark

component "GRO" is not protectable as a trademark, and that "the term 'GRO' is in common

usage by numerous third parties." (M/Quash Ex. C, Pennington's Answer, at p. 19, ¶ 10).

Because so-called "third-party uses" are relevant to assess the strength of a mark, including whether it has been diluted,[1] Pennington served subpoenas upon numerous third parties that have used other "Gro" marks, including SDT.  *See* Cicero Decl. ¶ 4.  Pennington's research uncovered that on February 10, 1986, SDT filed U.S. Trademark Application Serial No. 73/582,033 (hereinafter "the '033 Application") to register the mark,



for "fertilizer used in agriculture, horticulture, and forestry."  (Declaration of Michael Cicero, Opp. Memo. [doc. # 3-1]).  The same sources indicated that SDT claimed to have first used the TOTAL GRO mark on June 1, 1985, but had since abandoned the application.  *Id.*; *see also*, Exh. 1 appended thereto.  Despite the apparent abandonment, SDT has used, and currently uses, the above mark on its website, at www.totalgro.com.  (Cicero Decl. ¶ 3 & Exh. 2).

Following several unsuccessful service attempts, Pennington eventually served a subpoena *duces tecum* upon SDT (hereinafter "the subpoena"), on March 10, 2010.  (Cicero Decl. ¶ 4 & Exh. 3).  The subpoena included an attached Schedule A with 26 requests for documents which seek to discern the extent of SDT's use of the TOTAL GRO mark, and to uncover facts surrounding the filing and ownership of the '033 Application.  *See* Cicero Decl. and Subpoena, Exh. A to Affidavit of Phillip Price, Reply Memo., Exh. 2.  The subpoena commanded SDT to produce the requested documents on April 2, 2010, in Monroe, Louisiana, or

---

[1]  *See New Century Financial, Inc. v. New Century Financial Corporation, et al.*, 2005 WL 2453204, *3 (S.D. Tex. Oct. 4, 2005) (citing *Oreck Corp. v. U .S. Floor Systems, Inc.*, 803 F.2d 166, 170 (5th Cir.1986)).

alternatively, to forward copies of the documents to counsel for Pennington, via express mail. (Subpoena, Exh. A to Affidavit of Phillip Price, Reply Memo., Exh. 2).  The instructions on Schedule A note that, as a "Producing Nonparty" responding to a subpoena, SDT is entitled to invoke the confidentiality provisions of a November 9, 2009, Stipulated Protective Order entered in the underlying action between Scotts and Pennington.  (Subpoena, Sched. A, Inst. # 2; Exh. A to Affidavit of Phillip Price, Reply Memo., Exh. 2 ).[2]

Following service of the subpoena on March 10, counsel for SDT and Pennington entered into a dialogue to discuss SDT's various concerns with the requested production.  Over the next three weeks, the two sides exchanged e-mails.  For instance, on March 12, counsel for Pennington extended until April 2, the 14 day deadline for SDT to object to the subpoena.  (Exh. B to Affidavit of Phillip Preis, Reply Memo., Exh. 2).[3]  That same day, counsel for SDT responded,

> [t]hanks for your email.  We are close to being able to provide you a copy of the summary information by date and state over the past ten years.  *Before providing this information, we will require a written confidentiality agreement with your client.*  Further because all of the persons involved in this litigation are competitors of SDT, we will require that any persons desiring to contest this summary information send experts to the corporate headquarters to review the original corporate records and these parties execute agreement [sic] not to disclose the names of the customers.
>
> If this agreement is acceptable, we will provide you the required information.  If not we will be required to file a motion to quash the subpoena and request that an agreement of this nature be implemented by the [court].

*Id.*, Exh. C.  (emphasis added).

---

[2]  Pennington attached a copy of the Stipulated Protective Order to the subpoena.  *Id*.

[3]  By Rule, SDT's objections were due 14 days after service of the subpoena. Fed.R.Civ.P. 45(c)(2)(B).

In a lengthy e-mail transmitted on March 17, counsel for Pennington responded that it was willing to consider paring down the number of document requests to ten.  *Id*., Exh. D. Counsel further noted that pursuant to the Stipulated Protective Order, his client would not even see any information produced by SDT that was designated "CONFIDENTIAL – ATTORNEYS' EYES ONLY."  *Id*.  Accordingly, counsel asked SDT to articulate why it believed that the existing Stipulated Protective Order did not adequately protect SDT's interests.  *Id*.  Counsel also inquired why SDT thought that it was reasonable to require Pennington's experts to travel to Winnsboro, Louisiana to obtain the requested documents when SDT could simply search for the documents itself.  *Id*.  The e-mail concluded with,

> it is more fruitful for us to ventilate the issues in the context of the above-listed requests, discussing them one by one, instead of having to operate in the take-it-or-leave-it tenor of your current proposal.  We look forward to another communication from you that considers the present e-mail in its totality.

*Id*.

Less than ten minutes later, counsel for SDT tersely replied, "I will send you the information that have [sic] if you agree to my proposal.  Otherwise, I will file a motion to quash. Your choice."  *Id*., Exh. E.  On March 22, 2010, counsel for SDT followed up with, "[h]ave you decided whether to accept our proposal or do I need to file a motion to quash."  *Id*., Exh. F.

On March 30, counsel for Pennington wrote to counsel for SDT that he understood that their clients' principals had spoken with each other, and that he hoped to speak with SDT's principal directly, with permission of counsel.  *Id*., Exh. G.  Pennington's counsel expressed his, now prescient, belief that "such a discussion would stand a good chance of saving the parties a lot of time and expense by reaching an agreement going forward."  *Id*.  That same day, counsel for SDT responded, "I will talk with Mr. wollerson [sic] and let you know."  (Cicero Decl., Exh.

4

4).  *Id*.  SDT, however, did not again communicate with Pennington until April 5, after it had filed the instant motion to quash Pennington's subpoena.  (Cicero Decl. & Exh. 4, thereto).  The matter is now before the court.

**Law**

SDT seeks to quash the subpoena issued by Pennington because it purportedly violates Rule 45's protections against the disclosure of "trade secret[s], or other confidential research, development, or commercial information."[4]  Under Rule 45,

**(3) Quashing or Modifying a Subpoena**.

> **(A)** *When Required*. On timely motion, the issuing court must quash or modify a subpoena that:

> *       *       *

> **(iv)** subjects a person to undue burden.

> **(B)** *When Permitted*. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

> > **(i)** disclosing a trade secret or other confidential research, development, or commercial information;

---

[4]  The court observes that despite some general grumbling that the subpoena failed to notify SDT of the reasons for the document requests, SDT has since discerned the purpose of the discovery requests via conversations with counsel for Pennington and upon review of the underlying litigation itself.  Thus, the court does not read SDT's motion as questioning the relevancy of the discovery requests.  In any event, it is manifest that the requested discovery is relevant to the issues in the underlying action.  *See* discussion, *supra*.  Furthermore, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). The courts understand the rule to provide for broad and liberal discovery.  *See Schlagenhauf v. Holder*, 379 U.S. 104, 114-5 (1964); *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385 (1947).

5

\*          \*          \*

> **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
>
> > **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
> >
> > **(ii)** ensures that the subpoenaed person will be reasonably compensated.

Fed.R.Civ.P. 45(c) (in pertinent part).

Furthermore, a party or attorney that issues a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.  The issuing court must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply."  Fed.R.Civ.P. 45(c)(1).

The party seeking to protect the disclosure of sensitive information must first establish the confidential nature of the requested discovery.  *See Freeport McMoran Sulpher, LLC v. Mike Mullen Energy Equipment Resource, Inc.*,  2004 WL 595236, 10 (E.D. La. March 23, 2004); *In re Subpoena of AmeriCredit Financial Services*, 2008 WL 2594767 (N.D. Tex. June 30, 2008) (citation omitted) (the party opposing discovery has the initial burden of establishing that the information sought is a trade secret and that its disclosure might be harmful).  However, even if a party makes such a showing, "[g]enerally, modification of a subpoena is preferable to quashing it outright."  *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir.2004).  Indeed, "there is no absolute privilege for trade secrets and similar confidential information."  *Federal Open Market Committee of Federal Reserve System v. Merrill*, 443 U.S. 340, 362, 99 S.Ct. 2800,

2813 (1979) (quoting 8 C. Wright & A. Miller, Federal Practice and Procedure § 2043, p. 300

(1970)).  It is rare for a court to forbid outright the disclosure of trade secrets or confidential

commercial information.  *Id*. at n24.  "More commonly, the trial court will enter a protective

order restricting disclosure to counsel, or to the parties."  *Id*. (internal citations omitted).

## Discussion

Pursuant to the parties' pre-filing conversations, Pennington pared down its document

requests to the following 12 items,[5]

>    2.    Documents summarizing the unit volume of TOTAL GRO
>          Products sold in states and/or territories of the United States, for
>          each year during the past ten (10) years.
>
>    3.    Documents summarizing the revenue generated from the sales of
>          TOTAL GRO Products sold in states and/or territories of the
>          United States for each year during the past ten (10) years.
>
>    4.    Documents sufficient to identify the U.S. states and/or territories in
>          which SDT has sold, advertised, or distributed any TOTAL GRO
>          Products for the past ten (10) years.
>
>    8.    All documents concerning any agreements between SDT and any
>          person concerning any permission to use TOTAL GRO.
>
>    9.    A complete copy of the file history of the '033 Application,
>          including color photographs of the specimen(s) submitted during
>          prosecution of that Application.
>
>    10.   All documents concerning the decision to file the '033 Application,
>          other than communications between SDT and any of its legal
>          counsel.
>
>    12.   All documents, including but not limited to correspondence and

---

[5] During negotiations, Pennington excused SDT's obligation to respond to Document
Requests 9 and 10, based upon counsel for SDT's representations that SDT did not possess such
documents.  (Opp. Memo., pg. 8, n6).  In light of subsequent developments, however, Pennington
has renewed its right to seek formal responses to these requests.

court pleadings in which SDT may have accused any person of infringing or otherwise violating any rights in TOTAL GRO.

14.     Two samples each of three different advertisements published over the last ten (10) years (including but not limited to any printed ads, audio clips of any radio advertisements, and audiovisual clips of any television advertisements but excluding the TOTAL GRO Website) for any TOTAL GRO product.

15.     Two samples each of three different promotional materials published over the last ten (10) years (such as, for example, brochures, flyers, and catalogs) depicting any TOTAL GRO Product.

17.     Two samples of each variety of TOTAL GRO Packaging used over the past ten (10) years.

21.     All documents concerning the date of earliest use of TOTAL GRO.

22.     For each state or territory of the United States in which TOTAL GRO Products have been sold, all documents establishing the amount of advertising done over the last ten (10) years in that state or territory for such products, including but not limited to documents indicating: (a) advertising expenditures; (b) times at which such advertising was broadcasted or circulated; and (c) the media in which such advertisements occurred.

Subpoena, Exh. A to Affidavit of Phillip Preis, Reply Memo., Exh. 2; Opp. Memo., pg. 8.

SDT broadly contends that the subpoena seeks "thousands of documents that disclose trade secrets and other confidential research, development, and commercial information that are vital to the business operations of SDT."  (M/Quash Memo., pg. 2).  SDT somewhat narrows this barren recitation of Rule 45 by specifying that the confidential commercial information is comprised of "SDT's unit volume of sales in the last ten years, its revenue over the last 10 years and its advertising expenditures over the last ten years,"[6] i.e., SDT challenges Pennington's Document Request Numbers 2, 3, and 22.  *See* Subpoena, *supra*.  SDT further emphasizes that

_____

[6]  *Id*., pg. 7.

disclosure of this information will prove particularly damaging because Pennington and Scotts are its direct competitors.  *Id.*

Despite its vehement protestations, SDT has not submitted any affidavits or other competent evidence to establish the alleged confidential and sensitive nature of the requested documents or to what extent SDT, in fact, competes with the parties in the underlying litigation.[7] This failure alone may fatally undermine the motion to quash.  *See e.g., In re Subpoena of AmeriCredit Financial Services, supra* (motion to quash denied where movant presented no evidence to show that the documents were trade secrets); *contrast, Bramell v. Aspen Exploration, Inc.*, 2008 WL 4425368 (E.D. Tex. Sept. 24, 2008) (evidence presented regarding the confidentiality of customer lists).

Nonetheless, in an effort to bridge the seemingly narrow gap between the parties' negotiating positions, the court observes that SDT has offered to provide Pennington with a "detailed summary by date of individual sales made to each customer in each state for each year for the last ten years but would delete the name of the customer."  (Preis Affidavit).  So long as this summary includes unit volume and total revenue generated by TOTAL GRO for each of the past ten years, this proposal seemingly fulfills SDT's production obligations for document requests 2 and 3.  In fact, SDT's proposal goes beyond the document requests, because the subpoena does not require the data to be broken down by state.

SDT also stresses the need to prevent Pennington and Scotts from obtaining a list of SDT's customers.  Again, however, the remaining document requests neither seek customer

---

[7]  In his affidavit, counsel for SDT simply states that all parties in the underlying litigation are SDT's competitors.  (Preis Affidavit, Reply Memo., Exh. 2).

names, nor ask SDT to break down sales by customer.  Moreover, Pennington has not argued or established that it requires the names of SDT's customers.

The remaining points of friction between the parties may be reduced to SDT's insistence that any party desiring to review the original source records for the sale and revenue summary, must do so by sending its expert to SDT's corporate headquarters.  *See* M/Quash, Memo., pg. 3. In addition, the expert must execute a written confidentiality agreement not to disclose the names of SDT's customers.  *Id*.

To the extent that the court can safely assume, in the absence of any supporting evidence, that ten years of sales and revenue records are necessarily voluminous, it is not unreasonable for SDT, as a non-party, to require onsite review of the documents.  *See Wiwa, supra* (court may consider a non-party's expense and inconvenience).  Indeed, Pennington is obliged to take reasonable steps to avoid imposing undue burden or expense upon SDT.  Fed.R.Civ.P. 45(c)(1). Moreover, the Stipulated Protective Order itself contemplates the production of some documents at the producing party's facilities.  (Stipulated Protective Order, ¶¶ 2, 13).[8]

In at least partial contrast to its earlier e-mail,[9] SDT now contends that it will require Pennington to sign a separate confidentiality agreement *only if* Pennington wishes to review the original corporate records from which SDT has culled its responses to the document requests.

---

[8]  Of course, if SDT is able to identify preexisting year-end sales summaries for TOTAL GRO, then it may be able to quickly and inexpensively discharge its production obligations by redacting any sensitive customer information, and forwarding same to counsel for Pennington, with the appropriate CONFIDENTIAL designation.  *See* discussion, *infra*.  This good faith review will not only expedite the discovery process, it also will benefit SDT by potentially foreclosing Pennington's need to rummage through even more SDT documents onsite.

[9]  *See* Exh. C to Affidavit of Phillip Preis, Reply Memo., Exh. 2.

(SDT Reply Memo., pg. 6).  Pennington does not dispute that SDT should be afforded the protection of a confidentiality agreement; it only emphasizes that as a nonparty, SDT is already protected by the existing Stipulated Protected Order entered in the underlying litigation. (Stipulated Protective Order, ¶ 13).

Despite Pennington's attempts to coax an explanation from SDT as to why it feels that the existing Stipulated Protective Order does not adequately protect its interests, SDT simply argues that it wishes to author the confidentiality agreement.  However, the Stipulated Protective Order includes specific protections for trade secrets, product sales and volume, customer lists, and marketing plans, which shall be designated, "Confidential-Attorneys' Eyes Only Material." (Stipulated Protective Order, ¶ 9).  The agreement also applies "in full and without limitation," to a producing nonparty such as SDT.  *Id*., ¶ 13.  Furthermore, any expert who receives confidential information must execute a declaration which binds the expert to the provisions of the Stipulated Protective Order.  *Id*., ¶ 6(d) and Exh. A to Stip. Protected Order.

In the absence of any cognizable basis to establish the inadequacy of the existing Stipulated Protected Order, the court is compelled to find that the existing Stipulated Protective Order sufficiently protects SDT's interests.  *See Blanchard and Co., Inc. v. Barrick Gold Corp.*, 2004 WL 737485 (E.D. La. Apr. 5, 2004) (discussing provisions of protective orders entered in other cases).  SDT is being accorded precisely the same protections that its alleged competitors, Pennington and Scotts, have bestowed upon one another.[10]  Under the circumstances, a second protective order would constitute a wasteful exercise in superfluousness.  To the extent that SDT

---

[10]  In fact, as Pennington and SDT are both users of the "Gro" mark, which Scotts asserts the exclusive right to use, it appears that Pennington and SDT's interests are aligned.

continues to harbor any lingering misgivings, it may insist that it be added as an additional signatory to the existing Stipulated Protective Order.

Other than referring to the confidential nature of its advertising expenses, SDT's motion does not otherwise discuss Pennington's Document Request Number 22.  SDT also does not address the remaining nine document requests.  To the extent that SDT contends that these remaining requests seek confidential information, SDT has not established that its concerns will not be adequately addressed by the Stipulated Protective Order.  As emphasized above, SDT wants Pennington to sign a confidentiality agreement *only in the event* that Pennington opts to send an expert to SDT's facility to review the underlying documents.  *See* discussion, *supra*.

To the extent that SDT contends that compliance with the subpoena is unduly burdensome, it enjoys the burden of demonstrating that compliance would be "unreasonable and oppressive."  *Wiwa*, 392 F.3d at 818.  To determine whether a subpoena is unduly burdensome, the courts consider the following factors, "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed."  *Id*.  SDT's motion fails to address these factors; thus, it has not met its burden.  Regardless, the court's own cursory review of the document requests does not reveal them to be excessive in scope or overbroad; rather, they appear specifically tailored to the disputed matters at issue in the underlying litigation.

Finally, SDT seeks an award for attorney's fees that it incurred in connection with the instant motion.  *See* Fed.R.Civ.P. 45(c)(1).  In support thereof, SDT refers this court to the decision in *Huntair, Inc. v. Climatecraft, Inc.*, 254 F.R.D. 677 (N.D. Okla. 2008).  In contrast to

the instant case, however, the court in *Huntair Inc.*, found that the party issuing the subpoena had failed to take reasonable steps to protect the nonparty from undue burden and expense.  *Huntair, supra*.  Furthermore, in this case, SDT is the party that has prematurely truncated negotiations, and resorted to the courts. *Compare Huntair, Inc., supra* (party issuing subpoena filed motion to compel).

In its motion, SDT trumpeted its alleged need to file the instant motion to obtain relief from the April 2 deadline to file objections or to produce the requested documents.  However, SDT did not actually file the instant motion to quash until April 5.  Furthermore, there is no indication that SDT asked Pennington to extend its deadline to afford the parties additional time to bridge their differences.  Alternatively, SDT simply could have served Pennington with written objections to the subpoena, thereby suspending its obligation to comply with the subpoena, and again allowing breathing room for further negotiations.  *See* Comment 45-21 to Fed.R.Civ.P. 45.  Rather, it is manifest from the tenor and insistence of counsel's e-mails, that SDT was not interested in further accommodation or discussion.  On the other hand, counsel for Pennington's e-mails suggest that Pennington had not ruled out SDT's additional conditions.  First, however, Pennington needed SDT to explain the grounds for these conditions.  Nonetheless, SDT declined to further explain itself to Pennington, and has not proffered much if any justification to this court for its refusal.

The tenuous nature of SDT's objections are reflected by the limited relief afforded by this court.  Under the circumstances, SDT is not entitled to an award of attorneys' fees.  The court further declines Pennington's request to assess fees against SDT.  In the end, SDT succeeded in modifying, albeit not extensively, the terms of the subpoena.

Conspicuously absent from SDT's motion is a request for reimbursement of production expenses.  Whether this omission is by design (*e.g.*, Pennington has already agreed to reimburse SDT for these expenses) or stems from neglect, non-parties ordinarily must be reimbursed for their production, inspection, and copying expenses.  *See* Fed.R.Civ.P. 45(c)(2)(B)(ii) & (c)(3)(C)(ii); *see also* Comment 45-21 to Rule 45.  Moreover, SDT has effectively preserved the issue by seeking to quash the entire subpoena.  *See McCabe v. Ernst & Young*, LLP, 221 F.R.D. 423, 427 (D. N.J. 2004) (compiling cases where right to expenses was preserved via motion to quash).  Accordingly, the court will award SDT its *reasonable* production expenses.[11]

### Conclusion

For the reasons set forth above, the motion to quash subpoena duces tecum [doc. # 1] filed by SDT Industries, Inc. is hereby **GRANTED in part**, as follows,

The subpoena is modified to reflect that in the event a particular document request requires production of a voluminous number of documents, SDT may discharge its obligation by making those documents available for inspection at its facility in Winnsboro, Louisiana, subject to the inspecting expert's obligation to sign and bind him or herself to the provisions of the Stipulated Protected Order.  At its option, SDT shall be added as an additional signatory to the Stipulated Protected Order.  SDT is also entitled to reasonable production, inspection, and copying expenses that it has incurred, or will incur to *comply* with the remaining document requests.

The motion to quash [doc. # 1] is otherwise **DENIED**, and within the next 15 days from

---

[11]  To the extent that the parties have not previously resolved this issue among themselves, it goes without saying that they must do so in good faith.  A follow-up motion to plumb the depths of reasonable production expenses will not be favorably received by the court.

the date of this order, SDT shall comply with Document Requests 2-4, 8-10, 12, 14, 15, 17, 21, and 22, as set forth herein.

IT IS SO ORDERED.

THUS DONE AND SIGNED at Monroe, Louisiana, this 17th day of May 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

15